■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. NORMAN DICKINSON, Appellant.— Appeal from a judgment of the County Court of Saratoga County, rendered September 21, 1972, convicting defendant, upon his plea of guilty, of the crime of arson in the first degree. On November 7, 1969, a fire occurred in the home occupied by defendant and his family in

which his wife and young daughter perished. The fire originated in the downstairs kitchen area. Defendant was successful in getting his two sons out of the house, but his wife died trying to get their daughter out from an upstairs bedroom. Defendant was questioned about the fire, and for a period of 22 months thereafter became the subject of an investigation by the Saratoga County Sheriff's Department, during which time he was questioned on numerous occasions and was given two polygraph tests. During this period, defendant continuously told the same story, and maintained his innocence of any wrongdoing. On the evening of August 30, 1971, Investigator James Bowen asked Deputy Tosier to pick up defendant and bring him to the Sheriff's office. After a period of questioning by Investigator Bowen in the presence of Deputy Cooper, with defendant again giving the same version of the occurrence, defendant asked to be taken home. On the way, Investigator Bowen and Deputy Cooper continued to question defendant and, at one point, defendant stated, "I don't want to say anymore, I might incriminate myself." When asked by Investigator Bowen what he had said, defendant repeated, "I don't want to say anything more, I might incriminate myself." Upon hearing this, Investigator Bowen turned the car around and returned to the Sheriff's office where he asserts that he read and had defendant read and sign an acknowledgment of his constitutional rights. Investigator Bowen began questioning him again in the presence of Deputy Cooper. Defendant again gave the same answers that he had given before. Investigator Bowen then left the room and Sergeant Wooley entered the room and continued the interrogation. Both Bowen and Wooley denied that Wooley took over the interrogation by any prearrangement. Within 15 minutes Deputy Cooper left the room and advised Investigator Bowen that defendant was ready to talk to him. Investigator Bowen then questioned defendant and typed a statement wherein defendant admitted that he had started the fire. At a suppression hearing, Sergeant Wooley testified that Deputy Cooper had conducted the questioning, and that defendant had described the manner in which he had started the fire before Investigator Bowen returned to the room. Deputy Cooper, on the other hand, testified that Wooley had conducted the questioning, and that defendant made no confession until Bowen returned. On cross-examination, Sergeant Wooley was also evasive about certain aspects of the questioning while Investigator Bowen was absent. He did admit that he might have threatened to beat defendant. Defendant's version was that it seemed longer than 15 minutes; that he had been slapped in the face and had been held by Sergeant Wooley, while being punched about the stomach by Deputy Cooper. Investigator Bowen testified that when he returned to the room, he reminded defendant of his rights and defendant said, "I might as well tell you, I'll feel better." Defendant's version of this statement is that he said, "I might as well say something, save another beating. * * * I'll tell you whatever you want me to say." Thereafter, Investigator Bowen typed the statement wherein defendant admitted starting the fire. Defendant also stated that the acknowledgment of rights was signed at this time, although on its face, it is stated to have been executed at 10:00 P.M. Defendant was subsequently indicted and charged with two counts of murder in the first degree, and one count of arson in the first degree. The County Court denied a motion to suppress this confession, and defendant subsequently entered a plea of guilty to arson in the first degree in full satisfaction of the indictment. When defendant entered the plea, he stated to the court that he was doing so "To protect my son so that he will never know I thought he started the fire, yes, I will sacrifice that much of my life." When asked if the possible exposure to a sentence of 15 years to

life in the event he was found guilty of murder was a reason for offering to plead guilty to the third count, defendant replied, "No". The court then recessed to consult with counsel, and after the recess, the court said to defendant, "Now, Mr. Dickinson, it comes back to you. In the opening statements, Mr. McMahon said that you had maintained the assertion of your innocence. When I asked you about the facts of the fire alleged in count three, you, again, told me that you were innocent. Now, very simply I want to know from you, why, then, are you offering to plead guilty?" Defendant then replied, "For one, your Honor, to protect my son and secondly, your Honor, I want to avoid the chance of going to trial and being convicted of murder and spending 15 years in State's prison." The court then accepted the plea of guilty and subsequently sentenced defendant to serve an indeterminate term with a maximum of 10 years. On this appeal, defendant contends that: (1) the confession is clearly inadmissible in that it is the product of continued interrogation after he invoked his Fifth Amendment right; (2) the waiver provisions in the acknowledgment signed by him are ineffective; (3) the evasive and conflicting testimony of the People's witnesses is insufficient to sustain the People's burden of proof on the question of the voluntariness of the confession; and (4) that the evidence points to psychological and physical coercion. In *Miranda* v. *Arizona* (384 U. S. 436, 473–474), it was clearly stated that, "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." Here, defendant twice indicated that he wanted to cut off the interrogation. The first time when he indicated that he wanted to go home, and the second time in the police car on the way home when he clearly invoked his constitutional right to remain silent. At that point, the interrogation was required to cease, but instead, defendant was returned to the Sheriff's office and subjected to interrogation by three officers instead of one or two. Under these circumstances, defendant was physically deprived of his freedom of action and movement, and interrogated in an atmosphere which was overwhelmingly police dominated. This process involves "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely". (*Hoffa* v. *United States*, 385 U. S. 293, 304.) This is exactly what is prohibited by the determination in *Miranda* v. *Arizona* (*supra*). The statement made by defendant after he invoked his privilege is clearly inadmissible and should have been suppressed, since such cannot be other than the product of compulsion, subtle or otherwise. (*People* v. *Paulin*, 61 Misc 2d 289, affd. 33 A D 2d 105, affd. 25 N Y 2d 445.) The assertion that he voluntarily signed an acknowledgment and waiver of his constitutional rights immediately upon return to the Sheriff's office, after having just invoked his privilege, borders on the incredible. Defendant, who had only an eighth grade education and who worked as a laborer, in the light of his educational background and lack of previous experience with law, would appear to fall short of indicating a knowledge of waiver of his right to remain silent, particularly when he asserted twice that he wished to invoke his right to remain silent. (*People* v. *Thiel*, 26 A D 2d 897; *People* v. *Lacy*, 26 A D 2d 982; *People* v.

*Witenski,* 15 N Y 2d 392.) "It is also well established that waiver of such statutory and constitutional rights is occasioned only when the accused acts understandingly, competently and intelligently (*Rice* v. *Olson,* 324 U. S. 786), the valuation of the competent evidence being for the court." (*Matter of Bojinoff* v. *People,* 299 N. Y. 145, 151–152.) Similarly, after 22 months of interrogation wherein defendant continuously asserted his innocence, and on an evening after lengthy interrogation wherein he continued to maintain his innocence, the fact that after 15 minutes alone with two police officers he suddenly determined to confess his guilt without physical, mental or psychological compulsion also appears to be incredible. In any event, defendant having invoked his privilege to remain silent, any confession resulting from the continued interrogation was as a matter of law made under compulsion and, therefore, inadmissible. (*People* v. *Paulin, supra.*) Here, the confession cannot be deemed to have been voluntarily made, and the order entered September 6, 1972 denying the motion to suppress the confession and the judgment of conviction must be reversed, and a new trial ordered. Judgment reversed, on the law and the facts, the order denying the motion to suppress reversed, motion granted, and a new trial ordered. Staley, Jr., J. P., Greenblott, Sweeney, Main and Reynolds, JJ., concur.